IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS R. BECKER                            )                    CV 07-1576-KI
                                            )
                            Plaintiff,      )
                                            )            OPINION AND ORDER
            v.                              )
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                            Defendant.      )

H. PETER EVANS
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland Oregon 97223

                Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204-2902

TERRYE E. SHEA

1 - OPINION AND ORDER

Special Assistant United States Attorney
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104-7075

       Attorneys for Defendant

KING, District Judge:

      Plaintiff Thomas Becker brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and

remand for further proceedings.

## BACKGROUND

      Plaintiff protectively filed applications for SSI and DIB on July 13, 2004. The

applications were denied initially and upon reconsideration. After a timely request for a hearing,

plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge

("ALJ") on June 29, 2005. On August 4, 2005, the ALJ issued a decision finding that plaintiff

was not disabled within the meaning of the Act and therefore not entitled to benefits. This

decision became the final decision of the Commissioner when the Appeals Council declined to

review the decision of the ALJ.

      Plaintiff appealed the decision to U.S. District Court and the parties stipulated to a

remand for further administrative proceedings. The ALJ was directed to evaluate plaintiff's

ability to perform his past relevant work and, if necessary, proceed to step five of the sequential

evaluation.  An ALJ held a supplementary hearing on August 7, 2007 and issued a decision

August 21, 2007 finding plaintiff not disabled.

### DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert.

denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner

determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is

engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds

to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found plaintiff had the severe impairment of depression.  However, the ALJ did not find that this impairment met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

In addition, the ALJ found that plaintiff's obesity, hypertension, and back pain were not severe impairments.

The ALJ concluded plaintiff had the RFC to perform work at all exertional levels, but was limited to no contact with minors and to simple repetitive tasks.  The ALJ opined that given this RFC, plaintiff could not perform his past relevant work as a teacher and had not performed his other work as an assistant produce buyer, shipping clerk, office assistant, or telemarketer long enough for the jobs to be considered past relevant work.

The ALJ concluded plaintiff could perform other work in the national economy, including general clerical office assistant or telemarketer.  He could also perform work as a kitchen helper, recycler/re-sorter, or hand packager.

## FACTS

Plaintiff, born in 1958, alleges disability beginning September 20, 2003, due to depression, back pain and obesity.  Plaintiff graduated from college.  He worked as an elementary school teacher (kindergarten through third grade) for 15 years until he lost his job in November 2000 when he was arrested and convicted of felony solicitation of a minor over the Internet.  Due to his arrest and conviction, plaintiff stated he lost his job, his family, his teaching certificate, and has been unable to find work.  He is a registered sex offender.  Although he says he has no formal work restrictions as a result of his conviction, he voluntarily restricts himself from contact with minors to avoid accusations.

After plaintiff's release from jail, he worked at clerical and data entry-type jobs for four or five month stretches at a time.  He testified at the first hearing that he believed he could do those types of jobs again.  Plaintiff testified at the second hearing that he had last worked as a telemarketer 30 hours a week for five months.

Plaintiff reported first being depressed in about 1997.  Plaintiff now treats his depression with 60 mg. of Paxil daily and sees a mental health counselor every four to six weeks.  The medication helps "most of the time."  Tr. 230.  He complains that it affects his concentration and focus.  Gary Sacks, Ph.D., evaluated plaintiff on August 18, 2004 and diagnosed a Major Depressive Disorder of a moderate and episodic character with a GAF of 51.[1]  On April 20, 2005, Psychiatric Mental Health Nurse Practitioner Kathy Parrett opined:

He actually should qualify for social security because of his mental health

---

[1]A GAF score between 51 and 60 indicates that an individual has "[m]oderate symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders IV-TR 34 (4th ed. 2000) ("DSM-IV").

symptoms in the past and how they interfered with his ability to work.  I would definitely not insure that he would stay stable with his mental healthy [sic] symptoms on his medications if he were to take on even a part-time job.

Tr. 193.

Joe Wood, Psy.D., evaluated plaintiff on December 27, 2005 and diagnosed him with Major Depressive Disorder, Recurrent, Moderate to Severe.  Dr. Wood noted that plaintiff "may have overstated his level of depression.  He rated his level of depression as 9/10, however, he reported being fairly active through the day."  Tr. 415.

Jill Spendal, Psy.D., evaluated plaintiff on July 19, 2006 and diagnosed him with Dysthymic Disorder and Major Depressive Disorder, Recurrent, Moderate/Severe with a GAF of 60.

Plaintiff is 5'8" tall and weighs 240 pounds.  Plaintiff complains that he is unable to sit for more than 20 to 30 minutes a day before his back starts hurting.

On February 1, 2007, plaintiff's lumbar spine was x-rayed, at the request of Gary Olbrich, M.D.  He has mild to moderate loss of intervertebral disc height at L5-S1, which is likely degenerative.  He began complaining to Dr. Olbrich about back pain in September of 2005.  He described it as worse with lifting and had been treating it with Aleve, Ibuprofen or Tylenol.  Dr. Olbrich commented that plaintiff's "abdominal girth" is "contributing to his problem with back pain."  Tr. 469.  He assessed plaintiff with sacroiliitis, probably secondary to osteoarthritis.  In November of 2005, plaintiff told Dr. Olbrich that the medication etodolac, was "helping his back tremendously."  Tr. 467.  In December, he reported that when he awakens with a stiff back he takes a warm shower and he "does well the rest of the day."  Tr. 466.

Plaintiff can cook for himself, do dishes, take out the trash, go food shopping, do laundry,

7 - OPINION AND ORDER

vacuum and sweep.  He has a driver's license.  He is currently not seeking work because he does

not believe he has the necessary skills.  He currently lives with a friend.  He watches TV, plays

board games, card games, and video games, listens to music, reads, job hunts on the Internet,

takes a walk every day, naps, prepares frozen or canned meals, takes care of household chores,

and shops for groceries.

## DISCUSSION

I.    Consultative Exam for Back Pain and Obesity

The ALJ concluded that plaintiff's complaint about back pain "is without medical

etiology or clinical findings" and that his obesity imposed no functional limitations.  Plaintiff

argues that the ALJ failed to fully and fairly develop the record and that the ALJ should have

ordered a consultative exam to evaluate plaintiff's claim that he could not sit for more than 20 to

30 minutes at a time before experiencing back pain.  Dr. Olbrich treated plaintiff as having

sacroiliitis, probably secondary to osteoarthritis, in September of 2005.  In addition, plaintiff

asserts that the ALJ should have evaluated the effect of plaintiff's obesity on his ability to sit,

stand, walk, lift, carry, push, pull, climb, balance, stoop, crouch and manipulate.

The ALJ noted that plaintiff had three-view clinical x-rays of the lumbar spine which

showed mild to moderate loss in disc height at L5-S1, likely due to his build, which were

considered minimal and not clinically significant.  No other problems were noted.

A Social Security ALJ has an "independent duty to fully and fairly develop the record

and to assure that the claimant's interests are considered."  Tonapetyan v. Halter, 242 F.3d 1144,

1150 (9th Cir. 2001) (internal quotation omitted).  The ALJ must supplement the record if:  (1)

there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies

8 - OPINION AND ORDER

on an expert's conclusion that the evidence is ambiguous.  Webb v. Barnhart, 433 F.3d 683, 687

(9th Cir. 2005).  The supplementation can include subpoenaing the claimant's physicians,

submitting questions to the claimant's physicians, continuing the hearing, or keeping the record

open after the hearing to allow the record to be supplemented.  Tonapetyan, 242 F.3d at 1150.

        The x-rays showed only mild to moderate loss of disc height at L5-S1.  When he began

treatment for the back pain it helped "tremendously" and he reported to Dr. Spendal that his back

pain was due to a sedentary lifestyle since he had been out of work .  Tr. 441, 467.  Furthermore,

plaintiff was able to work during the period at issue, suggesting that the problem was minor.  In

short, there was no ambiguous evidence about plaintiff's back problem and the record was not

inadequate for the ALJ to evaluate plaintiff's complaints about back pain.

        Similarly, as the ALJ noted, no doctor assessed plaintiff as suffering from functional

limitations as a result of his obesity, although each of his doctors was fully aware of plaintiff's

weight and many encouraged him to lose weight.  Since there was no ambiguity in the record,

there was no need for the ALJ to order a consultative examination.

        The ALJ did not err in failing to order a consultative examination.

II.    Lay Witness Testimony

        Plaintiff argues that the ALJ failed to discuss the written statement of Diante Millage, a

friend of four years.  Millage described plaintiff as tiring easily, having problems focusing for

more than twenty minutes, feeling depressed once a week, needing to change posture twice an

hour due to back pain, and needing to rest while walking due to back pain.  Additionally, Edwin

Kraft, another friend, indicated plaintiff "limits lifting; avoids kneeling" and "squats and bends

with difficulty and very carefully/slowly."  Tr. 123.  Kraft noted plaintiff walks for a few blocks,

9 - OPINION AND ORDER

but needs to rest for five minutes before continuing.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ discussed Kraft's written statement, but did not specifically note Kraft's comments about plaintiff's difficulty in squatting, bending, lifting and kneeling. Plaintiff asserts that if Kraft's statement is accepted, plaintiff would not be capable of performing medium work which requires lifting up to 50 pounds and walking up to 6 hours a day.[2]

The ALJ should have given reasons for rejecting this portion of Kraft's written statement. Although the conclusion plaintiff draws about his exertional limitations does not follow from Kraft's statement alone, the ALJ must give reasons for rejecting this evidence.

Plaintiff also argues that the ALJ did not discuss Kraft's second written statement because Kraft used a form designed for medical sources. The form requires the person completing it to identify whether a person suffers from functional limitations on a scale from no problems to extreme problems. Plaintiff asserts that even if the ALJ could reject Kraft's assessment of plaintiff's functional limitations, he should be required to evaluate Kraft's narrative explanations.

---

[2]"Medium work" is defined to require "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

Contrary to plaintiff's assertion, the ALJ rejected Kraft's second statement not only because it was on a form designed for medical sources but also because plaintiff's medical circumstances had not changed so much as to warrant the diminished functioning Kraft noted in his second report as compared to his first report. This is a sufficient reason to discredit Kraft's second statement.

Finally, the ALJ failed to discuss Millage's statement. Millage noted plaintiff has hygiene problems, memory loss, avoids people, has poor attention for tasks that take longer than 20 minutes, experiences depression once a week for a couple of days, and needs to change positions twice an hour due to back pain.

"Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). I cannot confidently conclude that if the ALJ were to credit Millage's statement, he would still find plaintiff not disabled. Furthermore, I cannot, as the Commissioner suggests, find the error to be harmless because "all the problems with Mr. Kraft's statements apply to this witness statement as well." Def.'s Br. at 9. Kraft's first statement was qualitatively different from Millage's observations and the ALJ rejected Kraft's second statement because it was so different from his first statement without any reason to justify the difference.

The ALJ erred in failing to discuss a portion of Kraft's written statement and in failing to discuss Millage's statement at all.

III.    <u>Medical Evidence</u>

    A.    <u>Nurse Parrett</u>

Plaintiff argues that the ALJ failed to give adequate reasons for rejecting Parrett's opinion that plaintiff was unable to work.  Plaintiff concedes that Parrett, as a nurse practitioner, is not a "medical source," but argues that the ALJ may not ignore her opinion.  Indeed, SSR 06-3p states that "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."

Nurse Parrett opined in April of 2005,

> He actually should qualify for social security because of his mental health symptoms in the past and how they interfered with his ability to work.  I would definitely not insure that he would stay stable with his mental healthy [sic] symptoms on his medications if he were to take on even a part-time job.

Tr. 193.

Just as with lay witnesses, the ALJ must consider the opinions from sources other than acceptable medical sources, but may discount those opinions by providing "germane" reasons. <u>Nguyen</u>, 100 F.3d at 1467.  Since the ALJ failed to discuss this evidence which was favorable to plaintiff, and no reasonable ALJ would find him not disabled if it were fully credited, I cannot find the error to be harmless.  <u>Stout</u>, 454 F.3d at 1056.

In evaluating this evidence, I note that the ALJ may consider Parrett's treatment notes, including a note from two months before in which she reported plaintiff was "comfortable and happy" and stable on his medications.  Tr. 207.  Additionally, the ALJ may consider that Parrett's opinion is contrary to plaintiff's work history.  He worked as a teacher while suffering from depression, worked several temporary jobs and left not because of his depression but

because the work concluded, and he testified that he is not looking for jobs because he does not

have the necessary skills, not because he is depressed.  Finally, the ALJ may consider the fact

that Parrett did not explain how plaintiff's mental health symptoms interfered with his ability to

work.

      In short, the ALJ erred in failing to discuss this portion of Parrett's treatment notes and

the error is not harmless.

      B.    <u>Dr. Spendal</u>

      Plaintiff argues the ALJ failed to incorporate Dr. Spendal's conclusion that plaintiff's

"depression significantly interferes with his concentration and attention . . . in both the auditory

and visual modalities."  Tr. 447.  Plaintiff claims the limitation to "simple and repetitive tasks"

does not adequately address the limitation identified by Dr. Spendal.

      Dr. Spendal's full opinion on this subject is as follows:

> Thomas' testing profile indicates that the one cognitive area his depression
> significantly interferes with is his concentration and attention.  This can be in both
> the auditory and visual modalities.  Testing does indicate, however, that when
> Thomas can attend successfully his memory for information is strong.  The
> challenge for Thomas will be to remain attentive to incoming information.  His
> depression has not influenced his processing speed.

Tr. 447.  Dr. Spendal recommended that those working with plaintiff ask plaintiff to summarize

important points of discussions or meetings at the end of the meeting to ensure he processed it

properly.

      I find the limitation to "simple and repetitive tasks" sufficiently conveys the functional

problem identified by Dr. Spendal.  As Dr. Spendal noted, plaintiff has a strong memory and his

processing speed is normal.  Simple and repetitive tasks do not require a great deal of

concentration or attention.

13 - OPINION AND ORDER

C.     Dr. Sack

Plaintiff claims the ALJ should have incorporated Dr. Sack's GAF score of 51 into the RFC.

The ALJ properly reported that Dr. Sack assigned plaintiff with a GAF of 51.  The ALJ noted that the score was due to situational stressors, including unstable housing, career loss, and financial strain.

The GAF is a tool for a clinician to report his or her judgment of an individual's level of functioning with respect to psychological, social and occupational functioning.  DSM-IV at 34. A GAF score considers two components: the severity of one's symptoms and the ability of one to function.  Id.

Although the GAF score is a helpful means of evaluating a patient's condition at that moment, the ALJ need not incorporate it into the RFC.  The GAF score is simply a way to sum up a clinician's overall estimation as to the psychological, social and occupational functioning of a patient.  As the ALJ noted, Dr. Sack identified situational stressors, such as plaintiff's criminal conviction and unstable housing, making the GAF score not relevant to plaintiff's overall functional capacity.  Furthermore, a GAF of 51 is not automatically supportive of a finding of disability.  See Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 598 (9th Cir. 1999) (court upheld ALJ's decision that plaintiff was capable of working, despite depression, personality disorder and a GAF as low as 45/55 and 49).  The ALJ properly summarized and evaluated Dr. Sack's opinion and was not required to incorporate the GAF score into the RFC.

The ALJ did not err.

D.     Dr. Wood

Plaintiff argues the ALJ did not accurately report Dr. Wood's diagnosis of "recurrent moderate to severe" major depressive disorder.  Tr. 415.  Instead, the ALJ called it "moderate to intermittently severe" depression.  Tr. 246.  The ALJ also reported that Dr. Wood stated plaintiff's "symptoms 'may be embellished," when Dr. Woods stated plaintiff "may have overstated his level of depression."  Tr. 415, 246.

Plaintiff is correct that the ALJ incorrectly quoted Dr. Wood, but the error is harmless since the two statements are essentially the same.  Furthermore, plaintiff does not explain why the ALJ's incorrect report of Dr. Wood's diagnosis is meaningful.  Indeed, the other evidence in the record, including by plaintiff's own report, supports the notion that any severe episodes of depression *were* intermittent.

The ALJ did not err.

IV.     RFC

Plaintiff argues that the ALJ failed to consider the fact that plaintiff is incapable of working on a "regular and continuing basis" because of his episodic bouts of depression and fatigue due to his obesity.  At different times, plaintiff reported depression for two to three days once every three weeks, a few hours of depression about once a week, and a few hours of depression and a couple of days of anxiety.  Contrary to plaintiff's suggestion, however, plaintiff's reports are not inconsistent with an ability to work on a "regular and continuing basis" as required by SSR 96-8p.[3]  He reported feeling "sad" or "hopeless" during these episodes, or

_____

[3] SSR 96-8p states, "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

reported feeling depressed or anxious after a large "stressor" (e.g. he had to involve the police after two skinheads told him he had to leave his apartment by the end of the day). Tr. 165, 192, and 197.

In short, plaintiff's reports of his symptoms during these bouts do not interfere with an ability to work. This is particularly true given the ALJ's evaluation of plaintiff's credibility, which plaintiff does not challenge. The ALJ noted that plaintiff stopped working because his temporary assignments stopped, not because of his impairments or symptoms. Indeed, in answer to the ALJ's question during the second hearing about whether he was looking for work, he answered that he doesn't "have enough skill," not that he is too depressed. Tr. 540.

As plaintiff points out, however, the ALJ failed to consider all of plaintiff's impairments, including those which are not severe. Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id. Plaintiff complained of back pain and is obese and his complaints are not inconsistent with the medical evidence. Although these conditions may be non-severe, they may limit the amount of lifting and walking plaintiff can do.

V.    Further Proceedings

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability

can be made, and it is clear from the record that the ALJ would be required to find the claimant

disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is

warranted regardless of whether the ALJ might have articulated a justification for rejecting the

evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038

(2000).

      The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the

Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has

the flexibility to remand to allow the ALJ to make further determinations, including

reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in

which it is clear from the record that the claimant is unable to perform gainful employment in the

national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits

is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

      I do not "credit as true" the lay witness statements as requested by plaintiff because there

is sufficient evidence in the record to contradict the statements of these lay witnesses.  Cf.

Schneider v. Barnhart, 223 F.3d 968 (9th Cir. 2000) (credited lay witness statements, finding

limitations met or equaled a listing; Commissioner provided no evidence to support finding that

claimant could work).  Additionally, I note that remand is appropriate with regard to Nurse

Parrett's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand when

doctor's opinion not properly disregarded but record might contain sufficient reasons).

      I recognize that this will be the third time the matter will be sent back for further

administrative proceedings.  The evidence in the record, however, simply fails to establish

plaintiff's disability.  On remand, only the following issues should be dealt with:  (1) reevaluate

Kraft's statement about plaintiff's back pain and Millage's narrative statements on the mental

functioning witness statement form; (2) consider plaintiff's non-severe back pain and obesity; (3)

consider Nurse Parrett's comments about plaintiff's inability to work; (4) reassess plaintiff's

RFC based on those reevaluations; (5) reconsider whether plaintiff is capable of performing

other jobs existing in significant numbers in the national economy.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings as explained

above.  Judgment will be entered.


IT IS SO ORDERED.

Dated this 4th day of February, 2009.


  /s/ Garr M. King                                    
Garr M. King
United States District Judge